UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SWEETHEART CUP COMPANY, INC.,        :
                                     :
            Plaintiff,               :
                                     :  02 Civ. 6576 (BSJ)
       v.                            :
                                     :  **Order**
BUCHBERG INVESTMENT HOLDINGS, INC.,  :
AKIVA BUCHBERG AND GILBERT CAPY,     :
                                     :
            Defendants.              :
------------------------------------x

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

This action arises out of the termination of an agreement ("Agreement") entered into between the Sweetheart Cup Company ("Plaintiff") and the defendants, Buchberg Investment Holdings, Inc., Akiva Buchberg ("Buchberg"), and Gilbert Capy ("Capy"), collectively "Defendants". The parties entered into the Agreement on September 6, 2001. Under the Agreement, Buchberg and Capy sold two types of equipment ("Equipment") to Plaintiff: one type that manufactures a wrap product ("Wrap Equipment"), and the other that manufactures a bag product ("Bag Equipment").

Plaintiff brought suit for a declaratory judgment and other injunctive relief; Defendants answered and brought twelve counterclaims. The parties have now filed cross-motions for partial summary judgment. Plaintiff has moved for summary judgment on its Claim I, for a declaratory judgment, along with

- 1 -

Defendants' Counterclaims III (for Plaintiff's failure to pay for the Bag Equipment), IV (for Plaintiff's failure to pay for the Wrap Equipment), and XI, for loss of business. Defendants have cross-moved for summary judgment on Plaintiff's Claims II, III, and IV (which seek injunctive relief to prevent Defendants from divulging Plaintiff's confidential information), and Counterclaims I (for Plaintiff's failure to pay royalties), II (for Plaintiff's failure to maintain its patents), III, IV, and VI (for indemnification).

**Claim I: Declaratory Judgment**

Under the Agreement, Plaintiff agreed to pay a total for $400,000 for the Wrap Equipment, with $160,000 payable immediately, $80,000 upon Plaintiff's completion of market testing "provided the results of the [t]esting are acceptable to [Plaintiff] in its sole discretion," and $160,000 180 days after testing is completed. For the Bag Equipment, Plaintiff agreed to pay $400,000, with $160,000 payable when Plaintiff gave Defendants notice of its decision to use the Bag Equipment and $240,000 payable 180 days after such notice was given. The Agreement also provides:

> Notwithstanding the foregoing, Sweetheart, in its sole discretion, may, by notice given to BIH at any time prior to Sweetheart's full payment of the applicable Purchase Price for the Wrap Equipment and/or the Bag Equipment, respectively, elect to surrender such Equipment to BIH whereupon Sweetheart shall be deemed to have forfeited all payments theretofore made on

account of the Purchase Price for such Equipment and
thereupon Sweetheart shall be automatically released
from any liability for payment of the Purchase Price,
or the outstanding balance of the Purchase Price for
such Equipment, as the case may be.

On August 16, 2002, Plaintiff sent Defendants a letter stating: "This letter will constitute notice . . . that Sweetheart Cup has elected to surrender the Wrap and Bar Equipment . . . and forfeit all payment made to BIH prior to the date of this letter. Accordingly, Sweetheart Cup shall be automatically released from any further liability for any further payment of the Purchase Price."

Plaintiff alleges that Defendants are not entitled to payments beyond the $160,000 initial payment because Plaintiff has exercised its right to return the Equipment to Defendants and forfeit only the payments it had already made. Moreover, neither of the events that would trigger its obligation to pay for the Equipment has occurred.[1] Plaintiff thus seeks a declaration "that it has no current payment obligation" to Defendants under the Agreement and "that it may terminate the Agreement by returning the Equipment to BIH and forfeiting any prior payments it may have made to BIH." (Compl. ¶ 22.)

---

[1] For the Wrap Equipment, that trigger is the completion of testing that is acceptable to Plaintiff in its sole discretion, and for the Bag Equipment, that trigger is Plaintiff's notice to Defendants of its intent to use the Bag Equipment.

Defendants set forth a number of arguments in their opposition to Plaintiff's motion,[2] the majority of which miss the mark entirely. Plaintiff seeks a declaratory judgment only as to its payment obligations for the Wrap and Bag Equipment. Defendants' arguments as to Plaintiff's other obligations under the Agreement, including its obligations to keep Defendants reasonably informed and maintain Defendants' patents, are irrelevant to this claim.

The only argument Defendant presents that warrants attention is that the Agreement requires Plaintiff to exercise its "sole discretion" rights in good faith. A considerable number of cases hold that the implied covenant of good faith does apply to a party's exercise of its "sole discretion" under a contract. See, e.g., Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994) ("Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith"); Tymshare, Inc. v. Covell, 727 F.2d 1145, 1154 (D.C. Cir. 1984) (explaining that clause giving party the power to act "within [its] sole discretion . . . is not necessarily the equivalent of 'for any reason whatsoever, no matter how arbitrary or unreasonable,'" and

---

[2] Although Defendants' first set of papers sought summary judgment on Claim I, it appears from their further opposition papers that Defendants have abandoned that position and merely oppose Plaintiff's motion for summary judgment on that claim.

analogizing the inquiry to review for "abuse of discretion"); In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F. Supp. 712, 738 (S.D.N.Y. 1989) (holding that provision allowing one party to make a determination in its "sole judgment . . . does not obliterate implied good faith"); Mickle v. Christie's, Inc., 207 F. Supp. 2d 237, 249 (S.D.N.Y. 2002) (finding that where the defendant could rescind the sale in its "sole discretion," such a "subjective standard is circumscribed by an implied covenant of good faith and fair dealing"); In re Schick, 235 B.R. 318, 327-28 (Bankr. S.D.N.Y. 1999) ("'Absolute discretion,'" however, does not necessarily mean what it suggests, or negate the implied covenant of good faith and fair dealing.").

Accordingly, Plaintiff had a duty to exercise its sole discretion to terminate the contract in good faith. In moving for summary judgment, Plaintiff argues that no reasonable jury could find that it failed to act in good faith in performing its obligations under the Agreement. Plaintiff supports that argument with the sworn affidavits of Paul Ulrich, its Director of Marketing and Business Development, Dennis Mehiel, its Chief Executive Officer, Marsha Kipke, its Manufacturing Department Production Manager, and Mark Kirkwood, its Vice President of Sales and Marketing. These affiants all support the claim that Plaintiff chose to terminate the Agreement based on

disappointing test results of both the Wrap and Bag Equipment and the products themselves.

Plaintiff performed two sets of tests, an "In-Restaurant" market test, on only the Wrap Equipment, and a "Phase II" market test, on both types of equipment. These tests provided Plaintiff with sales and marketing results as well as manufacturing results.

For the In-Restaurant test, Plaintiff collected data from restaurant employees who tried the Wrap product. Paul Ulrich's second affidavit states that the results of the In-Restaurant test were mixed and contradictory. The majority of the restaurant operators who participated in the testing found that the Wrap product affected the speed at which they could serve customers, and that they preferred their old packaging product. Ms. Kipke explained that in preparation for the In-Restaurant test, Plaintiff also experienced numerous manufacturing problems with the Wrap Equipment. For instance, where Plaintiff's machines can generally produce 100 cases of product in half a shift of work, the Wrap Equipment took two days to do so.

After receiving the results of the In-Restaurant test, Plaintiff conducted its Phase II test, which involved a test product launch in Plaintiff's Great Lakes division. Mr. Ulrich states that it was Plaintiff's standard procedure to conduct such a second test. According to Mr. Ulrich's affidavit, the

results of the Phase II test did not alleviate Plaintiff's concerns; in fact, Plaintiff made only one sale of the Wrap product during the test, and that sale was to Pizza Hut, Buchberg's previous customer. Ms. Kipke states that the manufacturing results of this test were no more promising. The Wrap Equipment was not functioning for 26 ¼ out of a total of 73 ½ hours of testing. The effects of these breakdowns were exacerbated by the fact that the Wrap Equipment used French-made machines; each time it broke down, Plaintiff had to order spare parts from France and await their arrival in the United States.

In opposing Plaintiff's motion, Defendants make several arguments that Plaintiff failed to act in good faith, but cite no admissible evidence to dispute the sworn affidavits submitted by Plaintiff. Moreover, even if they were true, Defendants' allegations do not, as a matter of law, support a claim of bad faith.

First, Defendant contends that Plaintiff had a good faith obligation under the Agreement to engage in and complete testing of the Wrap Equipment, and that its failure to do so was a breach of the duty of good faith. Second, Defendants claim that Plaintiff did in fact conduct and complete testing, with positive results, and that Plaintiff's further testing of the Wrap Equipment was merely an attempt to delay or avoid paying Defendants. The only evidence Defendant cites in support of

these somewhat contradictory allegations is Buchberg's own affidavit, in which Buchberg claims that David Holley, a consultant hired by Plaintiff, reported some positive test results to Plaintiff. Allegations of one positive test result fail to create a genuine issue of material fact with regard to Plaintiff's good faith performance of the Agreement. Defendants can cite to nothing to contest the sworn affidavits of Mr. Ulrich and Ms. Kipke describing the extensive testing and disappointing results of the Wrap Equipment.

Defendants also argue that Plaintiff's filing of the instant case serves as evidence of a bad faith retaliation for Buchberg's August 14, 2002 letter to Dennis Mehiel, Plaintiff's Chief Executive Officer, demanding payment on the Agreement. The letter contained the following passages:

> When my acquaintances, which hold senior positions at International Paper, Georgia Pacific, and others, asked me what is going on with my technology and Sweetheart as a whole, I kept my mouth shut. However, I will not be quiet anymore . . . Dennis, lets [sic] finish it between us, otherwise it will cost you a lot of money and you can be sure a lot of publicity. (emphasis in original)

Plaintiff terminated the Agreement by letter to Defendants on August 16, 2002, and on the same day filed this complaint seeking a declaratory judgment that it owed no further payments under the Agreement. Defendant contends that Mr. Mehiel issued the directive to file this action based on his own political

agenda. (At the time of the Agreement's termination, Mr. Mehiel was running for the post of Lieutenant Governor of New York State.) In support of this allegation, Defendants cite to lengthy portions of the depositions of Plaintiff's employees and officers, arguing from them that none of these individuals had first-hand involvement in the drafting of Plaintiff's complaint. Defendants also argue that the timing of the complaint evidences Plaintiff's bad faith.

These arguments are utterly without merit. First, the fact that Plaintiff's deposed employees did not draft the complaint is completely irrelevant. Moreover, the allegation that Plaintiff sued for a declaratory judgment because of the threats contained in Buchberg's August 14, 2002 letter is pure speculation.

In conclusion, Defendants fail to create a factual dispute concerning Plaintiff's good faith performance under the Agreement. Accordingly, Plaintiff's motion for summary judgment on Claim I is granted and Defendants' cross-motion on this claim is denied. Defendants' Counterclaims III and IV, which seek payment for the Equipment, are dismissed. Plaintiff has no current payment obligation to any or all of the defendants with respect to the Agreement. Plaintiff may terminate the Agreement by returning the Wrap Equipment and Bag Equipment to Defendants and forfeiting any prior payments it has made to Defendants.

**Claims II, III and IV: Misappropriation of Trade Secrets, Tortious Interference with Prospective Business Relationships and Breach of Contract**

Defendants have moved for summary judgment on Claims II, III and IV of the complaint, which center on Plaintiff's allegation that Buchberg is likely to improperly disseminate Plaintiff's confidential information and trade secrets. In these claims, Plaintiff seeks a permanent injunction to prevent such dissemination. Defendants argue that summary judgment is proper because Plaintiff has not alleged that Defendants have actually distributed confidential information, and because Plaintiff has failed to seek a preliminary injunction since the filing of this action.

The first of these arguments is wrong as a matter of law. Under the relevant standard for injunctive relief, Plaintiff need only show that disclosure of confidential information is likely to occur, not that it has already taken place. See, e.g., Inflight Newspapers v. Magazines In-Flight, L.L.C., 990 F. Supp. 119, 125 (E.D.N.Y. 1997).

Defendants' second argument is likewise based on a misreading of the law. To prevail on a motion for a preliminary injunction in this Circuit, the moving party must establish: "(1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) a balance of hardships tipping decidedly toward the party seeking the injunctive relief."

Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992). "The standard for obtaining a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must actually succeed on the merits of the case, rather than merely demonstrate that success is likely in a future proceeding." Old Republic Ins. Co. v. Hansa World Cargo Serv., 170 F.R.D. 361, 385 (S.D.N.Y. 1997) (citations and internal quotation marks omitted). Nothing in the law requires that a party seeking a permanent injunction also seek a preliminary injunction.

Furthermore, disputes of material fact preclude summary judgment on any of these claims. Defendant asserts that Buchberg did not have access to any of Plaintiff's proprietary information, and therefore cannot threaten irreparable harm by divulging that information. Plaintiff, on the other hand, asserts that through extensive contact with Plaintiff's employees during the testing process, Defendants gained access to its confidential information. This dispute creates a clear issue of fact. Accordingly, Defendants' motion as to Claims II, III and IV is denied.

**Counterclaim I: Failure to Pay Royalties**

Defendants move for summary judgment on Counterclaim I, for Plaintiff's failure to pay royalties for its sales to Pizza Hut, as required under Section 2 the Agreement. Plaintiff argues

that there is a material issue of fact that precludes entry of summary judgment. Specifically, Plaintiff argues that Section 7(d) of the Agreement permitted it to offset the royalty payments due to Defendants because Pizza Hut questioned the validity of the Equipment and Products. This argument clearly creates a material issue of fact. Accordingly, Defendants' motion for summary judgment on Counterclaim I is denied.

**Counterclaim II: Abandonment of Patents**

In Counterclaim II Defendants claim that Plaintiff breached the contract by intentionally abandoning forty of Defendants' patents, in violation of Section 4 of the Agreement. That section obligates Plaintiff to pay all maintenance fees for, and maintain sole control over the prosecution and maintenance of, the patents listed on schedule "D" of the Agreement.

Issues of fact likewise preclude summary judgment on this claim. Both parties agree that forty of Defendants' patents were abandoned during the life of the Agreement. However, Plaintiff argues that schedule D does not reflect the parties' agreement due to a mistake in the drafting of the Agreement. Defendant disputes that version of the facts. Accordingly, Defendants' motion for summary judgment on Counterclaim II is denied.

**Counterclaim VI: Indemnification**

Section 7 of the Agreement provides that if either party proves a breach of the Agreement, the non-breaching party is entitled to indemnification for the costs and expenses sustained because of the breach. In Counterclaim VI, Defendant argues that Plaintiff must indemnify them for their litigation costs. Defendant has moved for summary judgment on this claim, despite the fact that it appears quite obvious that issues of fact remain with regard to which party, if any, breached a number of the Agreement's provisions. Defendant's motion on this counterclaim is therefore denied.

**Counterclaim XI**

Section 8(b) of the Agreement requires that Defendants do "not engage in an activity considered to advance the interests of consumer food service products other than those of Sweetheart." In Counterclaim XI, Defendants claim that Plaintiff's breach of the Agreement has impaired their ability to earn a living because Section 8(b) prevents them from pursuing other business opportunities. Plaintiff argues that this Counterclaim fails to state a claim because it seeks damages for Defendants' performance under the Agreement, rather than Plaintiff's alleged breach.

I agree. When awarding damages for a breach of contract, the court aims to put the non-breaching party in the position he would have been in had the contract been performed. If

Defendants could recover for performing their obligations under the Agreement and for Plaintiff's alleged breach, they would be in a better position than if the Agreement had been fully performed. It is precisely such a result that Defendants seek in Counterclaim XI. Accordingly, Plaintiff's motion for summary judgment on Counterclaim XI is granted.

**Conclusion**

Plaintiff's motion for summary judgment on Claim I, for a declaratory judgment, is granted; Defendant's cross-motion on that claim is denied. Defendants' Counterclaims III and IV and XI are all dismissed. Defendants' other motions for summary judgment are all denied.

The parties are directed to confer and submit a joint pre-trial order no later than Tuesday, August 9, 2005. Trial in this case will begin on Monday, November 7, 2005 at 9:00 a.m.

**SO ORDERED:**

/s/ Barbara S. Jones
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
June 23, 2005